Bigger, J.
Three separate eases in this court bearing this title — the parties being the same in each and the question involved being practically the same — were by order of the court consolidated and heard together.
C. Oeffler & Sons, Bengel Brothers Mining Company and Phillip Fick & Sons, engaged in the business of mining and shipping coal at Pomeroy, Meigs county, Ohio, filed complaints with the Railroad Commission of Ohio, charging that the Hocking Valley Railway Company was unjustly discriminating against them in the matter of furnishing ears for the transportation of coal. They charged — •
First. That the defendant railway company has refused and neglected to furnish complainants with a sufficient number of ears to move the product of the mines of said complainants, and that while the defendant company -has refused and neglected *274 to furnish the complainants with a sufficient number of cars, complainants loading from wagons by hand, tipple mines in the same locality have been receiving ears sufficient to move the full capacity of their mines, and that the only kind of ears furnished complainants by the defendant company have been box cars.
Second. The complainants further say that they have made repeated requests of the defendant company in the proper and prescribed manner for cars, and that they have received an insufficient number of ears for the transportation of their coal, and are unable to receive their quota of open cars to the detriment of their business and to their great loss.
Complainants prayed the commission that the railway' company be required to answer, and that upon a hearing and investigation the said railway company be required to desist from such unlawful discrimination.
The railway company 'answered these complaints, denying all the charges of unlawful discrimination against the complainants. The company alleged that it had furnished complainants at all times with their fair share of cars, and treated them with entire fairness, and that it had furnished them with the same kind of cars which it furnished to all wagon mines in the vicinity; that because of a great shortage of cars which had existed for more than sixty days prior to the filing of the complaints, the defendant railway company had furnished to the complainants, and all other wagon mines shippers, box cars in proportion to their respective immediate requirements, in so far as it was within the railway company’s power to do so, and without discrimination between shippers.
A hearing was had before the railroad commission upon the issues joined, and the railroad commission found that the complainant’s mines, as well as all other wagon mines operating regularly upon the line of the said railway company, and dependent upon it to transport their output to market under like conditions as shown to exist in these cases, should be recognized, as well as tipple mines, in the allotment and distribution of coal cars; and further, that-if the railway company is unable to furnish sufficient coal cars to meet the immediate require *275 ments of shippers of coal on its line, it is the defendant’s legal duty to determine by intelligent and disinterested examination by experts of the wagon mines, as well as the tipple mines, regularly operating upon its line under like conditions as complainants’ mines, and upon full and fair consideration of all the features which go to make up'the capacity of such mines, both actual and potential, to impartially apportion and distribute its available coal car equipment amongst all regular shippers of coal, according to their respective immediate needs and requirements. ^
The commission therefore ordered that the Hocking Yalley Railway Company cease and desist from the discrimination complained of in the complaints herein, and as found by the commission, and that in the future allotment and distribution of coal cars upon its line the defendant shall take into account and recognize the complainants’ mines, and all wagon mines regularly operating upon its line as well as tipple mines, and that defendant shall proceed to inform itself as to the capacity of the several coal mines of both classes upon its line, and give all "such mines a fair and unbiased capacity rating,' so that future allotment and distribution of coal cars may be made according to the immediate requirements of the several mines on its line without discrimination between these shippers.
The commission also further ordered 'that, until such rating is made by the railway company, the mines of C. Oeffler & Sons be rated at thirty-eight tons capacity, and ears distributed to it upon that basis, and a like finding was made as to Phillip Fick & Sons.
The commission found that it was unable to determine the capacity of the mines of Bengel Brothers Mining Company from the evidence before it, and therefore ordered that the railway company proceed to determine it in the manner pointed out in its order.
These action are brought by virtue of the statutes, Revised Statutes 244-24, to have these orders of the commission set aside on the ground that they are unreasonable and unlawful.
Section 15 of the railroad commission act provides that, “In all actions under this section thé burden of proof is upon the *276 plaintiff to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable as the case may be.” As I understand the contention of counsel for the plaintiff here, it is claimed that these orders are both unlawful and unreasonable. The burden is therefore upon the plaintiff to show that this is so by clear and satisfactory evidence. Quite a large amount of evidence has been introduced before the commission upon the hearing before it, and in addition to that evidence, which is before the court, considerable -additional evidence was taken upon the hearing in this court. The evidence taken before the commission I have read, and have reviewed the evidence taken upon the hearing in this court, and after careful consideration of the same and the arguments of counsel I am of opinion that, upon the facts of these cases, the order of the commission is not unreasonable and unlawful, but upon the facts disclosed is a lawful and reasonable order. I shall not undertake to review this evidence and the arguments of counsel which would extend this opinion beyond a reasonable length.
Summing up in brief the substance of these complaints made before the railroad commission, whose orders it is sought to have the court set aside, it is that the complainants have not been furnished a sufficient number of cars, and that they have not been furnished their just proportion as compared with coal operators loading their coal by means of tipples, and further that they have been discriminated against in the kind of cars furnished.
The evidence discloses the fact that the mines of these complainants are located but a short distance from the line of the Hocking Valley Railway Company; that their mines are equipped for the production of coal, and in my opinion the finding of the commission that the capacity of two of them is thirty-eight tons per day can not be said to be unreasonable in the light of the evidence. While the commission found that the evidence did not show the capacity of the third, it is at least as great as that of the others. These coal mines are known as wagon mines; that is, they have no switch extending to their mines, but haul the coal to the railroad in wagons and from *277 them shovel it into the cars, which are placed for that purpose in the railroad yards. There are also mines located in the vicinity which are equipped with tipples for loading coal directly into the ears placed upon switches extending to their mines. It is admitted that the practice of the company is to refuse to furnish these wagon miners what are known as gondolas or open coal cars, except at such times as the tipple miners are unable to load all such cars.
The rule and order of the company is that the gondolas shall be furnished to the tipple mines' and box cars furnished to wagon miners. The evidence also shows that it costs these wagon miners about two dollars a car more to load box cars than to load open gondola ears, as it is necessary to handle the coal twice, first shoveling it through the door and then by means of a second man in the car shoveling it into the ends of the cars; furthermore, that this results in injury to the coal, and that there is further loss by reason of the fact that frequently one team is compelled to wait on another in unloading, as but one team can unload at a time into a box car. The advantage of an open car in loading in this respect over a box ear would seem to be apparent. As a justification for the refusal to furnish open cars to the wagon miners the railway company says that for a considerable period of time before these complaints were filed there was a great shortage of cars, and that it was unable to supply the needs of the various mines located along its line, and that tipple mines can not load box cars from their tipples, while the wagon miners can load box cars, and that there is a demand for all open cars at its command by the tipple mines, which left none to be furnished to the wagon mines.
The evidence does show that there was a serious shortage of ears at the command of the railway company for a considerable period prior to the filing of these complaints before the railroad commission, and that the railway company, using all of the open cars at its command, was only able to supply about sixty per cent, of the capacity of the tipple mines. It is said that if the company is compelled to furnish open .cars to wagon mines it will result in their securing a less number of cars than they now receive. That argument is of course based upon the claim *278 and assumption that tipple mines can not load box cars, but it is in evidence that there is an appliance in use for loading box cars from tipples and that they can be so loaded. It is doubtless easier for a tipple mine to load gondola cars than to load box cars. But the evidence shows it is easier for a wagon miner also. Then why relieve the large operator from all these burdens, while placing it entirely upon the small operator. The railroad commission act provides that—
“Every railroad shall, when within its power so to do and upon reasonable notice, furnish suitable cars to any and all persons who may apply therefor for transportation of any and all kinds of freight in carload lots. In ease of insufficiency of cars at any time to-meet all requirements, such cars as are available shall be distributed among the several applicants therefor in proportion to their respective immediate requirements, without discrimination between shippers or competitive or non-competitive places, provided - preference may be given to shipments of live stock and perishable property.”
In my opinion this additional burden placed upon the miner who hauls his coal to the line of railroad in wagons is a discrimination not warranted by anything shown by the evidence in this ease. But it is said that these wagon miners are treated like all other shippers who load freight upon switches in the company’s yards, and that they therefore have no ground of complaint. But these shippers are engaged in the production and sale of coal in competition with other coal operators. They are not competing with the producers of salt and lumber and grain and such other articles. It is a discrimination between them and their competitors in the trade which is unjust to them. If it cost two dollars more to load a box car than an open car, then the difference between such a discrimination and' a rebate in freight charges to the large producer and shipper of that amount would seem to be theoretical rather than practical. The large producer of coal, by reason of his superior equipment and consequent cheapening of the cost of loading coal, already possesses an advantage over his smaller competitor, and certainly unless the necessities of the case make it imperative this handicap should not be added to -by any discrimination against him by *279 the common carrier, whose duty it is to treat all shippers alike.
I am unable to see anything in the evidence in these cases which makes such a rule imperative on the part of the railway company. There, is'no evidence in these cases to show that the public necessities were so -great that it was necessary to discriminate against these small producers. There is no claim that the freight yards of the defendant company were so congested at any time that its regular business would be interfered with by placing a sufficient number of cars upon the yard switches to supply the requirements of these complainants.
But it is said that it is to the interests of the railway company and the public at large to have these gondola cars loaded quickly. To that it may be answered, first, that there is no showing that the public interests are so great as to justify this-discrimination; and, second, it is not apparent to me how it would result as claimed. It is undisputed that these complainants loaded their cars at all times within the time limited by the company’s rules. Furthermore, if while the tipple mine is loading twenty of these open cars a wagon miner loads one, the twenty-one ears can’ go out at the end of the period as well as if they were loaded by the tipple mine. It is not pretended that each car is taken away as soon as it is loaded; a ear at a time, and I do not see any force in this claim. The fact is, as disclosed by the evidence, that the company had at its disposal a certain supply of cars to be loaded with coal, some box cars and some open ears. - The rule which th'e commission has promulgated upon this subject does not confine the company to the use of gondolas alone for coal. If the company has not sufficient gondolas to supply the demand of shippers, and must supplement the supply with box cars, I see no reason why the large shipper should not bear a fair and proportionate share of the additional cost of their use with the small shipper, and under the law the company has no right to impose all the burden of their use upon the small shipper.
I am also of the. opinion that the evidence in the case warranted the conclusion of the commission that, irrespective of the discrimination in the kind of cars, there was also a discrimination in the number of ears furnished to these complainants. The company admits that it never attempted to estimate *280 the capacity of these wagon mines. It is said that it is absolutely impossible for the railway company to hunt up these wagon mines and determine their capacity; that they only ship when the price of coal is high and cease shipment altogether when the price falls. But if they are equipped to make regular shipments when they are in operation, they are not to be discriminated against because they may not ship all the year around.
C. O. Hunter and George S. Peters, for plaintiff.
Wade H. Ellis, W. H. Miller and Roscoe G. Mauck, contra.
I recognize the force of the argument that it would be difficult if not impossible to furnish a stated supply of cars to every shipper who may wish at irregular intervals to ship coal from these wagon mines. It may be true that there are country coal banks which at irregular intervals might desire to make small shipments by rail; that such is the case is not disclosed by the evidence; but I can conceive of such cases, where it would be impracticable to make a rating for such shippers, and if a complaint were made in such a case there would not be any difficulty in distinguishing it from these cases. That is not the case disclosed by the evidence here. These mines, the evidence shows, are equipped for the mining of coal to as large an amount at least as one of the tpiple mines in the same vicinity and they are prepared to and will if furnished cars, ship regularly as do the tipple mines. They are located near to the defendant company’s line and there would not seem to be any mor.e practical difficulty in determining their capacity than that of the tipple mines.
Upon the evidence in these cases, therefore, and in the light of the authorities which I will not attempt to disscuss, I am of opinion that the order of the railroad commission was warranted by the evidence and the law, and that the plaintiff is not entitled to the relief prayed for.